# BEFORE UNITED STATES DISTRICT COURT

NOV 18 2022 PM 2:52
FILED-USDC-CT-HARTFORD

WENDY WITT
122 MONTAUK AVE
STONINGTON, CT 06378


v.                                                          CASE NO.: _____

DARRYL STEFONSKI
C/o STONINGTON POLICE DEPT.
VICTIMS ADVOCATE
173 S Broad St, Pawcatuck, CT 06379

&

OFFICER RYAN J ARMSTRONG
C/o STONINGTON POLICE DEPT
173 S Broad St
Pawcatuck, CT 06379

&

OFFICER POWELL
C/o STONINGTON POLICE DEPT
173 S Broad St
Pawcatuck, CT 06379

&

TOWN OF STONINGTON DBA STONINGTON POLICE DEPT
C/o STONINGTON POLICE DEPARTMENT
173 S Broad St
Pawcatuck, CT 06379

&

TOWN OF STONINGTON DBA STONINGTON POLICE DEPT
C/o Town Of Stonington Body Corporate and Body Politic
152 Elm Street
Stonington, CT 06378

## PERSONAL INJURY AND CIVIL RIGHTS COMPLAINT

Comes now, WENDY WITT, a Pro Se senior citizen, doctor, and first responder of her town and county (122 Montauk Ave Stonington, CT 06378 where all events material occurred).

1. She submits this **Personal Injury and 42 USC 1983 Civil Rights complaint seeking declaratory relief and damages** against the named local law enforcement individuals and business(es), Body Corp/Body Politic, and civilian parties (otherwise officers sued in their individual capacities and the aggressor Stefonski) for concurring harm and injury to her as explained herein below.

2. In sum, and she will repeat it differently as she goes forward in this propounding the totality of the circumstances to this Honorable Court, she was attacked within her home, called the police, and because there was an error and omission by the police officers who arrived to handle the matters, and a law in place rigidly observed requiring that someone be arrested - preferably the person deemed the "dominant aggressor", *<u>she was removed from her own home, with her personal effects not secured, and her attacker, the actual aggressor whom she called the police on in the first place was left in her residence unsupervised for a shocking period of time [emphasis added]</u>*.

3. Jurisdiction and authority are invoked and triggered under 28 USC 1331, 13334(3), 1367(a) and 42 USC 1983 and 1988. Reference is made to 28 USC 2201 and 2202 as well inasmuch as the Plaintiff seeks Judicial Review (5 USC 706-like thorough review of state/local actor compliance with federal rights and laws) and declaration of the rights, duties, and legal relations of the parties as noted pursuant to that thorough review.

4. She claims also concurring injury and harm by way of wrongful and false arrest as the result of their failure to follow proper practices, protocols, and procedures during a police/citizen encounter initiated by WITTS call to the police for help involving an impending domestic dispute or situation where she wanted her ex-boyfriend to leave her home before an argument escalated into domestic violence between them at his hands as it had before in the past.

5. Additionally incidental to all of this the allegation and question is raised as to whether the law as applied to her and as applied in this situation is unconstitutional as it was changed to require that someone be arrested whether or not, in the police officers discretion, the outcome would be one that the law could not be deemed to have intended.

6. When the police arrived at the scene at Ms. Witts home she felt relieved however it was a feeling that would soon reverse completely as she was arrested whilst protesting the arrest and all the while informing the police on the scene that he was the one on probation for assaulting her previously,

and the one with a criminal record, in her home raising his voice threateningly at her.

7. The outcome ended up being that the assailant was left at her home, in her home, with access to her personal belongings and such whilst she was removed from the premises.

8. The ex-boyfriends presence, and the altercation in her home, constituted a "plain" or at least "technical" violation of the terms of the ex-boyfriends probation which probation was structured to operate as a sort of protective restraining order of sorts to her benefit as his victim at the time probation was imposed for his prior episode of lapse in judgment involving domestic violence against her. There was probable cause to arrest him as the dominant aggressor under the totality of the circumstances and probable cause to believe that he had violated the terms of his probation once to police had to be called to encourage him to remove himself from her private property.

9. Yet Doctor WITT was the one arrested by those she called to keep the peace and protect her home, person, and property, in her kitchen dressed for leisure, on the floor kicking and protesting the error informing the officers of the truth and the probation violation of the ex-boyfriend, in her own home. Then she, a woman of renown and prestige – a Doctor nonetheless, as respected first responder in her community, was carted off from her home before her neighbors like a common criminal, shackled and

placed in a police car for all to see in showy fashion whilst the aggressor and trespasser was treated as a guest and victim in her own home.

## OVERVIEW OF THE CASE

10. All set forth above is incorporated below by reference as if fully set forth at length.

11. **The General Assembly approved a new family violence law on Thursday Feb 8, 2018 to prevent domestic abuse victims from being arrested along with their abusers. It is the added allegation herein that the law as applied to Ms. Witt was given unconstitutional application in violation of her constitutionally guaranteed and protected right to be secure in her person, property, and personal effects.**

12. The letter, spirit, and intent of the law was stated to be: _**"No victim should have to worry about being arrested if they are being abused,"**_ as said by state Rep. Robyn Porter, D-New Haven, who is a domestic violence survivor.

13. The facts in session found were that in Connecticut, 20 percent of the time when police are called to the scene of an intimate partner violence incident **both the victim and their abuser are arrested**, according to the Connecticut Coalition Against Domestic Violence.

14. **The "dual arrest" rate is more than twice the national average of 7 percent.**

15. *The reason for the high rate is Connecticut's mandatory arrest law, which was put in place to protect victims of domestic violence.*

16. The law previously said that if police find evidence that a crime — even a minor charge like breach of peace — occurred at a domestic violence scene, they must arrest based on probable cause.

17. The House voted to replace Connecticut's mandatory arrest law with a "*dominant aggressor law*," which would **require law enforcement to arrest only the most significant aggressor or the person who poses the most serious ongoing threat**. Rep. Craig Fishbein, R-Wallingford, was the only House member out of 150 to vote against the measure. "There is a need for this bill," said Rep. Fred Camillo, R-Greenwich. "We all know people in our communities who, because of the possibilities of a dual arrest, won't call the police in an aggressive situation with a partner." The Senate voted unanimously to approve the change. The bill went to Gov. Dannel P. Malloy's desk to be signed into law, and was.

18. After the passage of this law, but long enough to have police have changed their Standard Operating Protocols, practices, and procedures to comport with the change, spirit, letter, and intent of the laws on domestic violence spoken of above **on 5/24/2019 WENDY ANN WITT, MD, FACEP was arrested after she was abused by a former boyfriend at her residence when she called the police to her own residence for assistance and to**

remove him from the premises without incident. **SHE IS THE HOMEOWNER.**

19. With arrest records exceeding WITTS arms length, her ex-boyfriend – WHO ACTUALLY HAD BEEN ARRESTED EARLIER IN 2018 FOR DOMESTIC ABUSE INVOLVING HER BY AN OFF-DUTY OFFICER and who also was on probation at the time of her arrest (for the prior assault on WITT) – should have been the dominant aggressor in the eyes of the law in this situation and in any logical reasonable persons eyes who would, could, or did avail themselves of the available information to do reasonable due diligence and inquiry to exercise the duty of care standard owed to WITT as the victim of domestic abuse.

20. It accused therefore that the police Officers named herein failed to exercise the duty of care owed to the homeowner regarding her call for help against the usual aggressor then no longer wanted in her home due to his tendency to become violent and physical towards her.

## BACKGROUND ACCORDING TO THE POLICE REPORT OF ACCUSED OFFICER POWELL

21. All set forth above is incorporated below by reference as if fully set forth at length.

22. Officer Ryan J Armstrong, accused here as a Defendant, in his own words stated that: ... "On 5/24/19, I was assigned to evening shift uniformed

patrol in the Pawcatuck North sector of the Town of Stonington, CT from 1600 hours to 0000 hours. At approximately 2104 hours, I was dispatched to 122 Montauk Ave for a report of a domestic disturbance. While in route, dispatch advised me the female caller was now being uncooperative and providing minimal information.

23. Upon arrival, I made contact with *the calling party Wendy Witt* DOB 12/3/1953 hereinafter referred to as the accused. The accused stated she and her domestic partner, Darryl Stefonski hereinafter referred to as the victim, engaged in a heated argument. She didn't go into detail about what the argument was about, but stated that it was verbal only and did not get physical. **She stated she called the police because he is aggressive and the two have a history of domestic violence.** In speaking with the accused, I could see that she was intoxicated and incredibly agitated.

24. Officer Powell arrived on scene and went to speak with the victim. I made contact with the victim in the Kitchen. The victim turned to face me and I could see drops of blood on his shirt. I asked what had happened and he stated the accused smacked him in the face causing his tooth to go through the front of his upper lip.

25. The victim then flipped up his upper lip and showed me the wound. I asked the victim if he needed medical attention and he stated he did not. I asked him to go into detail about what happened.

26. *The victim stated he and the accused have been together for nine years and he is done with the relationship. He stated she has been aware the relationship is nearing an end, and a discussion began tonight about what was in store for their future. The two were seated at the dining room table, The victim asked the accused what she wished to do with the house they share. At this point, the discussion became heated. He stated the accused turned and smacked him in the face. He then showed me several blood droplets on the table from when it happened. While speaking with the victim further he began to redact his previous statement, stating to the effect that perhaps the accused had struck him accidentally while speaking passionately with her hands.*

27. I spoke again with the accused and asked what happened in further detail. The accused stated the two were arguing upstairs on the staircase at which point the two separated and she called police. I then asked about the blood on the victim's shirt. **She denied hitting the victim and stated he told her he was going to plant blood and stage an attack.**

28. At this point it was evident the accused was being untruthful. She had changed her story several times by now, and determined there was probably cause to effect an arrest. I asked the accused to turn around and put her hands behind her back. She reluctantly did. I then went to handcuff her at which point she pulled her arms into her torso and began yelling. She pulled away and eventually went to the ground where she continued to bring her arms in and refuse my orders to put her hands behind her back. I

was able to secure both arms behind her back and place her under arrest. handcuffed her to the rear, tested them for reasonable comfort, and double locked them. She was then placed in the rear of my patrol vehicle and transported to Stonington Police Headquarters for booking."

## MATERIAL FACTS

29. All set forth above is incorporated below by reference as if fully set forth at length.

30. WITT owns the home at 122 Montauk Ave Stonington, CT 06378, and there is no other on the Mortgage but her, nor on the deed but her. WITTS ownership of the home is a matter of public record and she personally informed the police of the fact on the date and at the time involved here. WITT has been a victim of domestic violence at the hands of Darryl Stefonski before and the records should show that.

31. That WITT has been a victim of Domestic Violence at the hands of Darryl Stefonski before was a matter of public record and was specifically told to Officers on the scene on 5/24/2019 including Officer Powell by WITT in protest of her arrest and explaining why the officers were called. Darryl Stefonski was on WITTS private property in her home when the Police were called, and when they responded, and he had been asked to leave and refused to do so causing the police to be called to the scene in probable violation of the terms of his probation.

32. Upon arrival at WITTS home the Police were advised by WITT that they were called because WITT no longer wanted Stefonski in or on her property but feared domestic violence at his hands for her desire that he "just leave" and because he was indicating that (a) he deemed her home as his own and as if he had ownership rights in it equitable or otherwise where he did not, and that (b) he had no intention of leaving without an escalated encounter between them of his own free will upon WITTS earnest request, or the polices involvement, whichever might occur first.

33. WITT was placed under arrest for an analysis by Officer Powell which did not include his eyewitnessing Stefonski injured at WITTS hands, and despite both WITT and Stefonski stating that WITT had not injured him repeated over and over.

34. Stefonski was on probation at the time of WITTS arrest, and had a lengthy arrest record which included prior assaults and trespassing-like conduct, he in fact was on probation and refusing to leave someone elses property without police interaction and encouragement, which seems to be probable cause to believe that he violated his probation right there in front of Officer Powell and his accompanying officers.

35. WITT was paraded, jailed, bonded, and released like a common criminal as if she had committed a crime and the officer had seen it or experienced or as if there was more probable cause to believe that she was in the wrong than the trespasser she asked to leave her private property without incident and who wouldn't.

36. She has nightmares about the incident, no longer feels protected nor safe, she has suffered embarrassment and deals now with chronic depression and anxiety, her colleagues heard of the incident of her arrest, her neighbors heard of her arrest and some witnessed it, she is now ostracized and ridiculed, sneered at even she feels, by others in the medical community that she associates with as a result of this.

37. WITT now sees a counselor regularly trying to get over an incident which she believes has imposed on her at least a mild case of PTSD through the Police Department, Officers, and her ex jointly and severally victimizing and terrorizing her in the manner explained above. See exhibit annexed for reference.

38. The Legislation Expert that WITT will call as witness will opine that none of this was supposed to happen.

39. The Counselor that WITT will call at a trial on the merits will speak to the extensive damage that this has done to the moral, self esteem, mental state, and sense of wellness and security in her person, property, and person effects that WITT feels.

40. The Officers that WITT will call at a trial on the merits will explain and opine as to the failure of the Police Department to properly retrain the officers in the wake of the new change in law and sensitivity to its new application with an eye toward the spirit, letter, and intent of the law restricting arresting the VICTIM with the aggressor.

41. The behavioral psychologist that WITT will call at a trial on the merits will opine and explain the pathology of the mind of a man who has imposed domestic abuse and is being asked to leave the home of the person he has abused in the past in a relationship.

42. A legal expert that WITT will call at a trial on the merits will opine and explain TRESPASSING and PROBATION where the trespass is occurring at the home of the party for whom the trespassing probationer was initially placed on the period of probation they are under and how the status as a probationer trespassing upon the property of their former victim where they are asked to leave and do not is a DOMINANT AGGRESSOR against whom a homeowner having a made a reasonable request for them to leave – and who fears for their safety – may use reasonable force to protect themselves and expel the trespasser from their home (though no such force was ever used by WITT in this instance).

43. The legal expert is also expected to shed light on whether the practices, protocols, and procedures applied by the Police Offices on the scene were in keeping with the changed state of the law restricting arrests on domestic dispute calls and requiring of the officers a degree of due diligence and duty to exercise due care so as not to arrest the wrong person to comport with the change in law and intent to protect the non-aggressor/true victim in the eyes of the law.

## TRESPASSING AND INJURIOUS FALSEHOOD

44. All set forth above is incorporated below by reference as if fully set forth at length.

45. Stefonski was on the property of WITT beyond her earnest request for him to leave.

46. Stefonski was in possession of the knowledge of this fact and knew that was why the police were called to the scene.

47. Stefonski lied when he told the police that WITT assaulted and he then tried to correct it by taking it back but the Police would not treat his statement as recanted.

48. Stefonski Knew that he was being dishonest and knew what the result could be, and yet after the arrest he still signed papers as if he were a victim knowing full well that his accusation of assault was inaccurate and made up.

49. Stefonski allowed the police to rely upon his false statement and it resulted in the arrest of WITT by the police relying upon his lie even though he recanted and indicated that he had been dishonest.

50. WITT is a product and service in that she is a medical professional and doctor in the medical community.

51. The injurious falsehood amounts to a disparagement of the plaintiff's person which affects her marketability.

52. The statements of Stefonski saying that WITT assaulted him were false and he admitted it to the police.

53. The defendant acted maliciously with intent to cause injury or at least recklessly without regard for the truth without lawful excuse.

54. To date WITT is paying a counselor, has suffered in her professional circle, and actual economic loss has occurred or will occur as a result as she has had to pay lawyers, a bond to get out of prison, and has been compelled to initiate this suit which costs her for technical expertise and clerical help including filing fees and such.

55. Stefonski has never acted to correct the records and thusly has contributed to the proximate cause of concurring harm and injury to WITT, however in mitigation Stefonski tried to tell the truth by saying that WITT did not hit him or cause his injury but the police would not accept it and instead looked away from it and the law and arrested WITT.

## CIVIL RIGHTS VIOLATION ACCUSATIONS

56. All set forth above is incorporated below by reference as if fully set forth at length.

57. Civil rights remedies come into play for willful police conduct that violates an individual's constitutional rights. A statute known as Section 42 USC 1983 is the primary civil rights law victims of police misconduct rely upon.

58. 42 USC 1983 requires that To prevail in a claim under section 1983, the plaintiff must state and prove two critical points: a person subjected the plaintiff to conduct that occurred under color of state law, and this conduct deprived the plaintiff of rights, privileges, or immunities guaranteed under federal law or the U.S. Constitution.

    Here the police maintain that they did what they did under full authority of probable cause, however the standard of probable cause was that as existed under a previous state of the law that no loner existed and a practice that has been decried and which the legislature has tried to abolish by passage of a revision of that prior state of the laws as to arrest in domestic violence call cases. WITT sat in prison for a time and was forced to bond out.

59. Due process of the law under the US Constitution was violated in that the practice, protocol, and procedure to be followed had changed and the new law was not followed nor looked to for guidance in how WITT was treated and the result was as explained here a senior citizen medical professional was mistreated, thrown to the ground, paraded, and taken away to the stockades essentially scarring her emotionally and mentally for life. Those in breach were the Town, and all police involved. The police organization,

as an individual, failed to properly train and supervise its staff, and after the fact has failed to administratively sanction them and retrain them. WITT sat in prison for a time and was forced to bond out.

60. Equal Protection under the US Constitution was violated in that WITT was not treated as the law then applicable said to treat her in fact she was treated as less than a probationer criminal who had previously assaulted her and whom she has nicely asked to leave her home and private property and then had to call the police to escort. Those in breach were the Town, and all police involved, The police organization, as an individual, failed to properly train and supervise its staff and after the fact has failed to administratively sanction them and retrain them. WITT sat in prison for a time and was forced to bond out.

61. It is alleged that the 1st Amendment to the US Constitution was violated in that false inaccurate and incomplete records – where WITT was not afforded due process of the law and where her first-hand account were overlooked - were created upon which adverse decisions against WITT are being made, were being made, and have been being made by the police organization, individuals therein, the Attorneys Office processing criminal charges, and others privy to the documentation. Those in breach were the town, and all police involved, The police organization, as an individual, failed to properly train and supervise its staff. WITT sat in prison for a time and was forced to bond out.

62. The 4th amendment of the US Constitution was violated in that WITT no longer feels safe and secure in her person, property, home, and personal effects and the aggressors – all of the Defendants – knew or could have come to know that their collaborative effort would leave any Senior Citizen fearful in their own home and fearful of seeking police help for anything. Those in breach were the Town, and all police involved, The police organization, as an individual, failed to properly train and supervise its staff and after the fact has failed to administratively sanction them and retrain them. WITT sat in prison for a time and was forced to bond out.

63. The named police Defendants and Police Organization have and maintain insurances of the law enforcement insurance, commercial liability, and general liability nature that covers the stated triggers listed herein up to at least $1M per claim per Defendant to cover claims such as this and the same waives immunity which could otherwise be alleged in some cases, waives exemptions from suit if any could apply here, and exposes them fully and completely to liability for what is accused herein. WITT sat in prison for a time and was forced to bond out.

## CONCLUSION

64. All set forth above is incorporated below by reference as if fully set forth at length.

65. Wherefore, WITT asks this honorable court to inspect the situation and parties as to their involvement and grant a judgement declaring the rights,

duties, and legal relations of the parties and DAMAGES against the joint and several Defendants at $1,000,000.00 per Police Nature Defendant under their law enforcement insurance policies and excess liability coverage lines and for a separate order for the individual Defendant Stefonski to pay $7,500.00 to WITT for expenses, pain, suffering, fees and costs of suit as a non-police uninsured Defendant.

66. Finally, WITT asks for all other such relief deemed warranted, appropriate, and typically available under the totality of the circumstances favorable to her cause.

67. In support of WITTS character she has annexed her professional resume. In support of the injury to her she has annexed a counselors letter regarding her emotional and mental state since the incident. If any document referenced is not annexed it will be included and filed under separate cover.

68. All set forth herein is sworn as true, correct, complete, and of the Undersigned own personal first-hand knowledge except where other sources or information and belief are stated or necessarily implied under penalty of perjury per 28 USC 1746.

Respectfully Presented,

*[signature]*

WENDY WITT
122 MONTAUK AVE
STONINGTON, CT 06378